## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, a New York corporation,<br><br>PLAINTIFF,<br><br>V.<br><br>PNC BANK, NATIONAL ASSOCIATION, a Delaware citizen,<br><br>DEFENDANT. | Case No. 2:22-CV-1660 |

## COMPLAINT

NOW COMES Plaintiff, Atlantic Specialty Insurance Company ("ASIC"), by and through its attorneys, Bentz Law Firm, P.C., and for its Complaint against PNC Bank, National Association ("PNC"), alleges as follows:

### THE PARTIES

1.  Plaintiff ASIC is a New York corporation with its principal place of business in Minnesota. ASIC is a citizen of the State of New York and the State of Minnesota.

2.  Defendant PNC is a national banking association with its principal place of business in Pennsylvania and main office in Delaware. PNC is a citizen of the State of Delaware.

### JURISDICTION AND VENUE

3.  This Court has jurisdiction over this cause under 28 U.S.C. §1332(a)(1) as the matter in controversy, exclusive of interest and costs exceeds the sum or value of $75,000.00 and is between citizens of different states.

1

4. Venue is proper in this District under 28 U.S.C. §1391(b)(1) because PNC has its principal place of business in this District, is subject to personal jurisdiction and resides in this District.

5. Venue is also proper in this District under 28 U.S.C. §1391(b)(2) because DBi Services ("DBi"), ASIC's bond principal, has accounts with PNC based in this District from which a substantial part of the events giving rise to this claim occurred.

## FACTS COMMON TO ALL COUNTS

6. Prior to approximately October 22, 2021, DBi was a private contractor in the business of providing general contracting services for, among other things, public construction projects located throughout the United States.

7. Pursuant to various contracts that DBi entered into with various project owners/obligees, and in accordance with state law for each project, DBi was contractually obligated to obtain and provide payment and performance surety bonds for various projects to guarantee DBi's performance obligations under its various contracts and to ensure the payment obligations of DBi to its subcontractors, vendors and suppliers that it engaged for the various projects and/or supplied labor, materials and/or supplies to DBi (hereinafter collectively referred to as "Subcontractors"), subject to the terms of the bonds and corresponding contracts.

8. ASIC is a surety company in the business of issuing surety bonds on behalf of contractors throughout the United States, including but not limited to the States of Pennsylvania, Massachusetts, Florida, Texas, Utah, Georgia and Virginia.

9. Beginning on or shortly after April 2017, DBi requested surety bonding extension of credit from ASIC. In exchange for premium and execution of an indemnity agreement, ASCI extended credit to DBi and issued payment and performance bonds on

DBi for various public bonded projects located in Pennsylvania, Massachusetts, Florida, Texas, Utah, Georgia and Virginia.

## **THE BONDED PROJECTS**

10. Namely, at the request of DBi, ASIC, as surety, issued the following payment and performance bonds (collectively, "Bonds") on behalf of DBi, as bond principal, for the projects identified below, in favor of the obligees:

   1. FDOT – State of Florida, as Obligee in connection with the Project – FLFOT Dist. 3 AM Bay Calhoun R1 – Bond No. 800044980, in the penal sum of $28,464,900;

   2. Central Florida Expressway Authority, as Obligee in connection with the Project – OCEA 414 and 429 – Bond No. 800071112, in the penal sum of $1,854,390;

   3. TXDOT – State of Texas, as Obligee in connection with the Project – San Antonio W Routine Maint R2 – Bond No. 800044977, in the penal sum of $14,188,793.24;

   4. NTTA – North Texas Tollway Authority, as Obligee in connection with the Project – NTTA-CTP Shoulder Dem HFST – Bond No. 800071108, in the penal sum of $4,917,912.26;

   5. TXDOT – State of Texas, as Obligee in connection with the Project – TXDOT Austin Dis Travis Cty. GR – Bond No. 800071141, in the penal sum of $2,181,871.90;

   6. VADOT – Commonwealth of Virginia, as Obligee in connection with the Project – VDOT N Va. I-495 BIMS 156244-CF – Bond No. 8000071181, in the penal sum of $2,203,505.76;

   7. VADOT – Commonwealth of Virginia, as Obligee in connection with the Project – VDOT Lot 2 Southeast Rest Area – Bond No. 800035574, in the penal sum of $2,301,718;

   8. UDOT – State of Utah, as Obligee in connection with the Project – Utah Rest Area Master – Bond No. 800005518, in the penal sum of $414,277.81;

   9. TXDOT – State of Texas, as Obligee in connection with the Project – Texas DOT Lufkin Dist. San Jacinto – Bond No. 800071105, in the penal sum of $1,480,991.90;

3

10. GADOT – State of Georgia, as Obligee in connection with the Project – GDOT D5 Comp Maintenance Ins. – Bond No. 40166501, in the penal sum of $ $3,200,000;

11. PennDOT – State of Pennsylvania, as Obligee in connection with the Project – Penn DOT, Dist. 06, Bridge Clean – Bond No. 800071142, in the penal sum of $1,209,672;

12. MassDOT – State of Massachusetts, as Obligee in connection with the Project – Sch. & Emerg. Rep Martha's Vineyard – Bond No. 800047456, bond in penal sum of $897,699.08;

13. MassDOT – State of Massachusetts, as Obligee in connection with the Project – MassDOT Dist. 4 – Bond No. 800071109, in the penal sum of $693,201.82;

14. GADOT – State of Georgia, as Obligee in connection with the Project – GADOT D1 Herbicide App. – Bond No. 800071173, in the penal sum of $3,007,477.20;

15. GADOT – State of Georgia, as Obligee in connection with the Project – GADOT Dist. 3 Herbicide App – Bond No. 800071174, in the penal sum of $3,381,506.16;

16. GADOT – State of Georgia, as Obligee in connection with the Project – GADOT Dist. 5, Herbicide App. – Bond No. 800071175, in the penal sum of $3,197,236.52;

17. City of Virginia Beach, as Obligee in connection with the Project – City of VA Beach Sweeping – Bond No. 800047464, in the penal sum of $2,500,000; and

18. PennDOT – State of Pennsylvania, as Obligee in connection with the Project – PENNDOT 8 Dist. Wide Herbicide – Bond No. 40174290, in the penal sum of $1,858,769.58.

11. After the issuance of the aforesaid Bonds, DBi worked on the bonded projects. Bonded contract funds that were paid by the various project owners/obligees to DBi on the bonded projects included sums that were to be paid to various Subcontractors for the bonded projects. Said bonded contract funds were deposited, in whole or in part, into an account that DBi held at PNC.

4

## PNC'S LOANS TO DBI AND PNC'S KNOWLEDGE OF DBI'S BUSINESS OPERATIONS AND BONDING RELATIONSHIP WITH ASIC

12. DBi had a lending program in the approximate amount of $70 million dollars and a surety program in excess of $400,000 million. Approximately 90% of DBi's revenue was derived from bonded public works projects.

13. In 2021, PNC provided financing to DBi and, upon information and belief, became aware of DBi's public contracting work.

14. In 2021, DBi maintained and used a deposit account with PNC and regularly made deposits into and withdrawals from this account.

15. Upon information and belief, in underwriting DBi and its financial risk to extend credit and during the course of the banking relationship between DBi and PNC, PNC gained actual knowledge, constructive knowledge and/or inquiry notice: (a) of DBi's status as a contractor, that its main source of revenue was derived from public works construction projects and that pursuant to the state laws governing DBi's said public construction contracts, DBi needed bonds guaranteeing its performance on the construction contracts and (b) that DBi employed and hired numerous workers and subcontractors that were owed money from the funds DBi earned on the construction projects.

16. Further, upon information and belief, PNC gained actual knowledge, constructive knowledge and/or inquiry notice during the course of the banking relationship between DBi and PNC, in which PNC conducted ongoing financial analyses and kept records of DBi's assets, including accounts receivable, that a significant amount of funds in DBi's deposit account with PNC included bonded contract funds from DBi's bonded public construction projects.

17. PNC therefore had actual knowledge, constructive knowledge and/or inquiry notice that the equitable title to the bonded contract funds belonged to DBi's Subcontractors that earned the funds on the bonded projects and not to DBI nor PNC.

### PNC SWEEPS FUNDS FROM DBI'S ACCOUNT

18. Despite this knowledge, from around August 2021 and continuing thereafter DBi closed its operation on October 22, 2021, PNC swept, ceased and/or set off DBi's operating account balance at PNC in the total approximate amount of $4,676,531.39 and applied said monies to the amount DBi owed PNC.

19. Upon information and belief, PNC set off the approximate amount of $4,676,531.39 in order to reimburse the bank for DBi's loans with the bank.

### DBI CEASES OPERATIONS AND DEFAULTS ON BONDED PROJECTS AFTER PNC SWEEP OF BONDED CONTRACT FUNDS

20. As of October 22, 2021, DBi ceased doing business.

21. DBi's abandonment of the bonded contracts on or shortly after October 22, 2021, and DBi's failure to pay its Subcontractors, constitute acts of default under the underlying project contracts between DBi and the respective bonded project owners and Subcontractors.

### ASIC INCURS NUMEROUS PAYMENT AND PERFORMANCE BOND CLAIMS AND PAYMENTS

22. Beginning shortly after PNC's setoff of DBi's account and continuing thereafter DBi's cessation of business on or about October 22, 2021, ASIC received numerous performance and payment bond claims resulting from DBi's defaults on multiple bonded projects, including but not limited to its failure to pay its Subcontractors on various projects that were bonded by ASIC.

23. ASIC, pursuant to its legal and contractual obligations as surety under the bonds that it previously issued on behalf of DBi, has paid numerous claims and has incurred significant losses on the payment bond and performance bond claims that it began to receive shortly after August 2021.

24. Upon information and belief, and subject to ASIC's ongoing investigation, of the funds set off by PNC, approximately $2,123,232.18 of the $4,676,531.39 was comprised of bonded contract funds which were equitably owned by DBi's Subcontractors and were being held by DBi in its operating business checking account with PNC at the time of the setoff on August, 2021, as demonstrated by ASIC's combined payment bond claims and expenses on all bonded projects, excluding attorneys' and consultants' fees incurred by ASIC, which to date totals approximately $2,123,232.18.

25. ASIC continues to receive payment bond claims which may include additional bonded contract funds wrongfully set off by PNC.

## ASIC'S EQUITABLE SUBROGATION RIGHTS

26. DBi, as Principal under the Bonds, was contractually obligated to pay various claims of the Subcontractors on the aforementioned projects.

27. Due to DBi's payment of the claims of the Subcontractors, ASIC, as surety of DBi, is entitled to assert the benefits of equitable subrogation pursuant to Pennsylvania law. *Jacobs v. Ne. Corp.*, 416 Pa. 417, 423-24, 206 A.2d 49, 52 (1965) (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962)).

28. Under the doctrine of equitable subrogation, ASIC has a priority interest over PNC and other creditors to the contract funds. The priority granted to ASIC, as a surety, to contract funds of its principal, in this case DBi, has long been recognized by the United States Supreme Court. *See e.g. Pearlman*, 371 U.S. 132 (1962); *Prairie State*

7

*National Bank v. United States*, 146 U.S. 227 (1896); *Hennignsen v. United States Fidelity and Guaranty Co.*, 208 U.S. 404 (1908).

29. As a result of PNC's wrongful set off of all $4,676,531.39 contained in DBi's deposit account on August 2021, of which approximately $2,123,232.18 was comprised of bonded contract funds, DBi was unable to continue any further operations on or complete any of the remaining bonded projects, was unable to pay all of the claims of the Subcontractors for the bonded projects, and was therefore in default under the bonded project contracts and subcontracts.

30. As a direct result of PNC's wrongful set off of bonded contract funds that were deposited into DBi's account from specifically-identifiable construction project owners, DBi was unable to and failed to pay its Subcontractors. As a result, DBi defaulted on its legal obligation to pay said Subcontractors. ASIC received claims from and paid the aforesaid unpaid Subcontractors as it was legally obligated to under its Bonds by virtue of the labor, materials and/or supplies that each of them had previously supplied to or for the bonded projects, and who were legally entitled to payment from ASIC as a result of DBi's default. ASIC did not pay any of the aforementioned claims as a volunteer, but instead paid pursuant to its legal obligations under the Bonds and/or applicable state law in order to protect its own interests.

31. ASIC investigated the claims DBi's Subcontractors made to ASIC in connection with DBi's default, and ASIC discharged its legal obligations to DBi's Subcontractors by paying said Subcontractors' timely and valid claims.

32. In total, as of the filing of this instant Complaint, ASIC has received and paid combined claims of unpaid vendors of DBi for the bonded projects, in the approximate

amount of $2,123,232.18. ASIC made the aforementioned payments of $2,123,232.18 in order to discharge its legal obligations under the Bonds. These claimants (unpaid vendors of DBi) were entitled to payment for services provided to the bonded projects and should have been paid with the bonded projects' contract funds disbursed by the respective project owners to DBi, which monies were instead wrongfully set off by PNC.

33. After ASIC paid the aforementioned Subcontractors as legally required by the Bonds, by operation of law, ASIC was subrogated (and has been assigned each claimants rights) to the rights of the Subcontractors, DBi, and the bonded project owners/obligees. By virtue of ASIC's rights as subrogee and assignee to the rights of DBi, the Project owners/obligees and the Subcontractors who were legally and beneficially entitled to said bonded Contract funds, ASIC can assert a cause of action against PNC to recover said bonded contract funds, and PNC is therefore liable to ASIC for the wrongful set off of bonded contract funds in the approximate amount of $2,123,232.18. PNC's wrongful sweep caused DBi to be in default under the bonded construction projects. Justice requires that the loss ASIC incurred be shifted to PNC to the full extent of the approximately $2,123,232.18 in bonded contract funds that it wrongfully swept, as PNC's priority to said funds and equitable position is inferior to that of ASIC's.

34. ASIC received claims against the performance bonds it issued on behalf of DBi from numerous public agencies in the states of Florida, Georgia, Massachusetts, Pennsylvania, Texas, Utah, Virginia and various public agencies in Canada. In order to discharge its legal obligations under the performance bonds, ASIC paid $11,344,059 to the aforementioned public agencies in order resolve the claims under the performance bonds.

## PNC'S KNOWLEDGE OF GOVERNING LAW

35. ASIC is imputed with constructive knowledge of governing law, including but not limited to relevant Pennsylvania, Massachusetts, Florida, Texas, Utah, Georgia and Virginia common law and statutes governing construction projects, the payment of moneys from the various project owners to the corresponding prime contractors, the circumstances under which project funds are to be held in trust, or imputed with a constructive trust, for the benefit of various Subcontractors of DBi.

36. Prior to and at the time of the improper set off of the approximate amount of $2,123,232.18 by PNC in August 2021, said funds being held by DBi were equitably owned by DBi's Subcontractors, and ultimately ASIC through equitable subrogation and/or assignment to the rights of said Subcontractors. The approximate amount of $2,123,232.18 in bonded contract funds wrongfully set off by PNC in violation of these equitable rights constituted identifiable, specific chattel.

37. PNC's actions in connection with its wrongful setoff, conversion and/or taking of funds from DBi's account in August 2021 were performed by PNC with either the specific intent to permanently deprive DBi's Subcontractors as equitable owners of such funds from the use of or benefit of said bonded contract funds, and/or were knowingly used by PNC in such a manner as to permanently deprive DBi's Subcontractors, as equitable owners of such funds, from the use or benefit of said bonded contract funds.

## PNC'S KNOWLEDGE AND WRONGFUL SET OFF OF BONDED CONTRACT FUNDS

38. At the time of and prior to the setoff of DBi's account in the approximate amount of $2,123,232.18, PNC, through its employees, as well as through its own

documents, had actual knowledge, constructive knowledge and/or inquiry notice of the following:

    A. That DBi was a contractor engaged in commercial and institutional construction which 90% of its business was comprised of bonded public construction projects in various states including the States of Pennsylvania, Massachusetts, Florida, Texas, Utah, Georgia and Virginia;

    B. That DBi had in place surety credit and in order to perform its public works contracts was required to provide payment and performance bonds for its bonded construction projects, and that DBi obtained payment and performance bonds, in relevant part, from ASIC;

    C. That with respect to surety bonding, there is a tripartite relationship between: a) a surety, such as ASIC; b) the bonded contractor or bond principal, such as DBi; and c) the bonded project owner to whom the bond obligation is owed, *i.e.*, the bond obligee;

    D. That DBI hires subcontractors and suppliers to assist it to complete its construction projects is performed by Subcontractors; and

    E. That each of the deposits made into DBi's account at PNC consisted of specifically-identifiable funds that were received from bonded construction project owners.

39. Additionally, at the time of and prior to the August 2021 setoff, PNC also had, and/or was imputed with, actual knowledge, constructive knowledge and/or inquiry notice of the following:

    A. That under Pennsylvania common law, as set forth in *Rodi Boat Co. v. Provident Tradesmens Bank & Tr. Co.*, 236 F. Supp. 935, 936-37 (E.D. Pa. 1964), *aff'd*, 339 F.2d 259 (3d Cir. 1964) (applying Pennsylvania law) a bank's right of setoff against its borrower/debtor does not include the right to set off constructive trust funds and that generally speaking, a bank has no right to set off identifiable funds of a third party in a depositor's account against a debt due by the depositor;

    B. That under Pennsylvania, Massachusetts, Florida, Texas, Utah, Georgia and Virginia common law, a constructive trust is a court imposed trust and an equitable remedy to avoid unjust enrichment;

    C.    That under the Uniform Commercial Code as enacted in Pennsylvania ("UCC"), Section 1103(b) specifically provides that unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity supplement its provisions. 13 Pa.C.S.A. § 1103; and

    D.    That the approximate amount of $2,123,232.18 set off to date from DBi's account on August, 2021 was comprised of bonded contract funds, by virtue of the principles of law and equity.

40.    In light of PNC's actual knowledge, constructive knowledge and/or inquiry notice as referenced above, PNC's sweeping of bonded contract funds from DBi's account on August, 2021 was contrary to and in violation of controlling law.

41.    By correspondence dated November 17, 2021, February 4, 2022 and April 19, 2022, ASIC has also demanded that PNC return any and all bonded contract funds that were contained in its sweep of DBi's checking account. (These letters are attached hereto and collectively marked as **Exhibit 1**). Despite being aware of ASIC's factual and legal positions as to its entitlement to said bonded contract funds, PNC nevertheless continues to refuse to return any bonded contract funds to ASIC.

## COUNT I - CONVERSION

42.    ASIC realleges and incorporates by reference paragraphs 1 through 41 above as though set forth fully herein.

43.    At the time(s) of the aforesaid, wrongful set off of bonded contract funds in the approximate amount of $2,123,232.18 by PNC, said funds were equitably the property of said Subcontractors, and ultimately ASIC, through equitable subrogation to the rights of said Subcontractors and vendors and/or assignment from said Subcontractors.

44.    PNC wrongfully assumed control, dominion, ownership and/or possession of the funds to date totaling approximately $2,123,232.18 which, on and prior to August 2021, were equitably owned by the aforementioned Subcontractors by virtue of the labor,

materials and/or supplies which they had previously supplied and/or provided to the bonded projects.

45. ASIC, as assignee and equitable subrogee of DBi and the Subcontractors it paid, and as a surety with a priority right to the Contract Funds, demanded possession of the aforesaid bonded contract funds from PNC. ASIC, as assignee and equitable subrogee of DBi, had and continues to have a right to said funds, and has a present and unconditional legal right of immediate possession of said funds. PNC's refusal to pay and/or turn over to ASIC the wrongfully set off funds totaling to date approximately $2,123,232.18 gives rise to an actual and concrete controversy between ASIC and PNC.

46. PNC's actual knowledge and/or constructive knowledge of DBi's business dealings as demonstrated by the foregoing paragraphs and subparagraphs and exhibits attached hereto, as well as its actual and/or constructive knowledge of the governing common law, put it on notice of inquiry as to the nature of funds that it wrongfully swept from DBi's account(s), as said funds were bonded contract funds in accordance with aforesaid common law.

47. PNC's claimed right of setoff to reduce the principal does not and cannot apply to the wrongfully set off bonded contract funds from the aforesaid public construction Projects, totaling approximately $2,123,232.18 to date, as PNC had actual and/or constructive knowledge, and/or was on notice of inquiry that said funds constituted bonded contract funds that were equitably owned by the aforementioned Subcontractors on and prior to August 2021, and are now owned by ASIC as assignee and equitable subrogee.

48. PNC's conduct in wrongfully sweeping funds from DBi's account(s) was malicious, wanton, willful and oppressive as PNC was well aware of ASIC's ownership interest in the funds.

WHEREFORE, Atlantic Specialty Insurance Company respectfully requests that the Court grant the following relief:

A. Awarding ASIC the amount of $2,123,232.18 plus such other amounts based upon further evidence and discovery in the instant matter which is determined by the Court to be the full amount of bonded project contract funds wrongfully set off by PNC from DBi's account(s);

B. Declaring that any amount determined by the Court as referenced in subparagraph A above are constructive trust funds and are equitably owned by ASIC, as subrogee;

C. Ordering that PNC turn over the wrongfully set off funds referenced in the foregoing subparagraphs to ASIC;

D. To the full extent permitted by law, granting ASIC prejudgment interest, punitive damages, attorneys' fees and costs of this action; and

E. For such other relief as this Court deems appropriate.

## COUNT II - CONSTRUCTIVE TRUST

49. ASIC realleges and incorporates by reference paragraphs 1 through 48 above as though set forth fully herein.

50. PNC, by virtue of its actual knowledge, constructive knowledge and/or inquiry notice, as set forth in the proceeding paragraphs and exhibits hereto, wrongfully set off, assumed control, dominion, ownership and/or possession of the aforementioned funds totaling at least, to date, approximately $2,123,232.18 and therefore, became the constructive trustee of said funds which were and/or are to be held in trust for the benefit of the equitable owners of said funds, including the aforementioned Subcontractors who

furnished labor, services, materials and/or supplies for the bonded projects, and/or ASIC, as assignee and equitable subrogee of DBi and/or said Subcontractors.

WHEREFORE, Atlantic Specialty Insurance Company respectfully requests that the Court grant the following relief:

A. Awarding ASIC the amount of $2,123,232.18 plus such other amounts based upon further evidence and discovery in the instant matter which is determined by the Court to be the full amount of bonded Project contract funds wrongfully set off by PNC from DBi's account(s);

B. Declaring that any amount determined by the Court as referenced in subparagraph A above are constructive trust funds, are equitably owned by ASIC, as subrogee, and that PNC, as constructive trustee, has an immediate duty to transfer all such constructive trust funds to ASIC;

C. Ordering that PNC turn over the wrongfully set off funds referenced in the foregoing subparagraphs to ASIC;

D. To the full extent permitted by law, granting ASIC prejudgment interest, attorneys' fees and costs of this action; and

E. For such other relief as this Court deems appropriate.

Date: November 21, 2022

Respectfully submitted,

*BENTZ LAW FIRM, P.C.*

*/s/ Amy E. Bentz*
Amy E. Bentz
PA I.D. No. 52691
aebentz@bentzlaw.com
The Washington Center Building
680 Washington Road, Suite 200
Pittsburgh, PA 15228
Phone: (412) 563-4500
Fax: (412) 563-4480

*Counsel for Plaintiff, Atlantic Specialty Insurance Company*